O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONYA T. COOLEY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | NO. SACV 13-948-MAN<br><br>MEMORANDUM OPINION<br>AND ORDER |

　　　On June 24, 2013, plaintiff filed a Complaint seeking review of the denial of her application for disability and disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI"). (ECF No. 4.) On August 7, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 10.) On August 25, 2014, the parties filed a Joint Stipulation, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 24 at 27-29.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 2, 2006, plaintiff filed applications for DIB and SSI.  (Administrative Record ("A.R.") 117-21, 791-92, 1252-56.)  Plaintiff, who was born on May 20, 1960 (*id.* 120), claims to have been disabled since January 24, 2005 (*id.* 25, 701).  Plaintiff has past relevant work ("PRW") experience as a restaurant manager and waitress.  (*Id.* 712.)

On the alleged onset date, plaintiff was 44 years old, which is defined as a younger individual age 18-49.  (A.R. 712 (citing 20 C.F.R. §§ 404.1563, 416.963).)  As noted by the ALJ, plaintiff's age category subsequently changed to "closely approaching advanced age" (an individual aged 50-54).  (*Id.*; *see also* 20 C.F.R. §§ 404.1563(d), 416.963(d).)  As of the date of this Memorandum Opinion, plaintiff is 54, the upper limit of the closely approaching advanced age category, and in less than two months, her age category will change again to "advanced age."  *See* 20 C.F.R. §§ 404.1563(d), 416.963(d); *id.* §§ 404.1563(e), 416.963(e) (persons aged 55 or older are considered persons of advanced age).

After the Commissioner denied plaintiff's applications for benefits initially, and upon reconsideration, plaintiff requested a hearing.  (A.R. 25.)  On November 18, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Helen E. Hesse (the "ALJ").  (*Id.* 25, 32.)  Medical expert ("ME") Joseph E. Jensen, MD, and vocational expert ("VE") Stephen M. Berry ("VE Berry") also testified.  (*Id.* 25.)  On April 22, 2009, the ALJ denied plaintiff's claims (*id.* 25-32).  The decision was appealed, and this Court issued a decision remanding the matter on June 27, 2011.  (*Id.* 718-32.)  On December 5, 2011, plaintiff, who was represented by counsel, appeared and testified at a second hearing before ALJ Hesse.  (*Id.* 697, 1258-85.)  An ME, Dr. Samuel Landau, and VE, Alan L. Ey ("VE Ey"), also testified.  (*Id.*)  On February 29, 2012, the ALJ denied plaintiff's claims.  (*Id.* 701-14.)  On April 25, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (*Id.* 687-90.)  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In her February 29, 2012, decision, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date of January 24, 2005. (A.R. 703.) The ALJ determined that plaintiff has the severe impairments of: degenerative disc disease of the neck and low back; status post bilateral carpal tunnel release; status post left shoulder surgery for impingement; and partial tear of the rotator cuff. (*Id.* 704.) The ALJ concluded, however, that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* 707.)

After reviewing the record, the ALJ determined that plaintiff:

> has the residual functional capacity to perform the following: lift and carry twenty pounds occasionally and ten pounds frequently; sit for six hours and stand or walk for two hours, with normal workday breaks, in an eight-hour workday, but must be able to change positions, briefly, for one to three minutes every hour; only occasionally climb stairs but never climb ladders, ropes, or scaffolds; never balance; only occasionally bend or stoop; only occasionally perform forceful gripping, grasping, twisting, or turning bilaterally; only frequently perform gross and fine manipulation bilaterally; only occasionally perform above-shoulder work with the left upper extremity; only have occasional neck motion but avoid the extremes of motion and, at other times, keep her head in a comfortable position; only occasionally hold a fixed head position for fifteen to thirty minutes at a time; never work at unprotected heights or around unprotected machinery; never drive heavy equipment or motorized

vehicles; and is precluded from the safety operation of others.

(A.R. 707.)

In making this finding, the ALJ considered the medical evidence and opinions of record (A.R. 707-11) as well as the subjective symptom testimony of plaintiff, but found that plaintiff was not credible to the extent her statements were inconsistent with the RFC (*id.* 711-12). The ALJ gave significant weight to the opinion of the medical expert, Dr. Landau, adopting his functional limitations. (*Id.* 708, 710, 711.) She gave little weight to the opinions of: plaintiff's treating physician, Dr. Shamlou; the examining physician, Dr. Mandel; the prior ME and State agency consultants; and the consultative examiner, Dr. Yashruti. (*Id.* 709.) The ALJ disregarded Dr. Yashruti's assessment that plaintiff was limited to only occasional gross and fine manipulation. (*Id.* 711.)

Based on the testimony of VE Ey, the ALJ found that plaintiff is unable to perform her PRW as a restaurant manager or waitress. (A.R. 712.) The ALJ also relied on VE Ey's testimony that plaintiff had acquired "some very basic customer service sales skills" from her PRW and that these skills were transferable to telemarketer jobs, which exist in significant numbers in the economy. (*Id.* 713.) Accordingly, the ALJ found plaintiff has not been under a disability from January 24, 2005, through the date of the decision. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett

4

v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges two sources of error. First, plaintiff claims the ALJ failed to carry the Administration's burden at step 5 of the disability analysis. (Joint Stip. at 4, 5-12.) Second, plaintiff claims the ALJ erred in her assessment of plaintiff's credibility regarding her limited hand use. (*Id.* at 4, 16-21.) Because the Court finds that remand for the award of benefits is

warranted on the first issue in dispute, the Court declines to address the ALJ's assessment of plaintiff's credibility.

### I. The ALJ Erred In Her Step 5 Analysis.

#### A. Factual Background

At step 5 of the sequential analysis, the ALJ found that plaintiff was unable to perform her past relevant work and adopted VE Ey's testimony that: plaintiff "acquired customer service and sales skills from her past relevant work"; these skills were transferable to the occupation of telemarketer; an individual with plaintiff's age, education, past relevant work experience, and residual functional capacity ("RFC") could perform the occupation of telemarketer; and there were significant numbers of telemarketer jobs in the national economy. (A.R. 712-13.) VE Ey's testimony was the only evidence the ALJ cited in support of his step 5 decision that plaintiff was not disabled. (*See generally id.* 713.) Accordingly, the sole basis for the ALJ's determination at step 5 is the following excerpt from VE Ey's testimony:

> [ALJ]: And does she have any skills that would transfer to other work within the hypothetical [of plaintiff's age education, past relevant work experience, and residual functional capacity]?
> 
> [VE]: There would just be some very basic customer service sales skills.
> 
> [ALJ]: And they would transfer to what?
> 
> [VE]: They would transfer to a telemarketer.

(*See id.* 712-13, 1283.)

In reaching this assessment of plaintiff's skills, VE Ey stated that he "defer[red]" to the summary of plaintiff's past relevant work that was prepared by VE Berry, the VE who testified at

plaintiff's first hearing before the ALJ, and had no changes or amendments to it. (A.R. 1280.) According to this summary, plaintiff had no transferable skills from her work as a waitress but acquired the following skills from her work as a restaurant manager: "knowledge of food service, restaurant operations, cook[ing], menu planning, customer service, business manager and supervisory skills, recordkeeping, and [illegible]." (*Id.* 203.) VE Berry's summary did not identify "sales skills" among the list of skills that plaintiff acquired from her past relevant work (*id.* 203); to the contrary, VE Berry testified that plaintiff acquired *no* skills from her past relevant work that would transfer to other work plaintiff could perform (*id.* 685).[1]

Plaintiff contends that the ALJ erred at step 5, because: VE Ey's "brief fragment of a sentence," indicating that plaintiff has "some very basic customer service sales skills," was not substantial evidence supporting the ALJ's finding at step 5; VE Ey's testimony that plaintiff acquired sales skills from her PRW was inconsistent with the Dictionary of Occupational Titles ("DOT") descriptions of her PRW, and the ALJ failed to reconcile this discrepancy in his written findings; and VE Ey did not adequately identify the particular skills plaintiff possesses that would specifically transfer to the telemarketer occupation.[2] (*See* Joint Stip. at 8, 10-11.)

---

[1] The ALJ asked VE Berry "Does [plaintiff] have any skills that would transfer to other work within this hypothetical?" and VE Berry responded, "No, I don't believe so." (A.R. 685.) Significantly, the hypothetical to which the ALJ referred was a less restrictive assessment of plaintiff's residual functional capacity than either of the two hypotheticals she presented to VE Ey in the second hearing. (*Compare* A.R. 684-85 *with id.* 1282-84.)

[2] Plaintiff also contends that a comparison between the DOT descriptions of plaintiff's past job as restaurant manager, the only semiskilled work from which she acquired transferable skills, and a telemarketer job, reveals that the two jobs: involve the use of different tools and/or machines and entail different materials, products, subject matter and services; are classified as having a different "materials, products, subject matter and services" ("MSPMS") codes; and occur in different "Work Fields." (Joint Stip. at 9.) However, plaintiff provides no legal authority for the notion that the VE must rely on matching work fields and MPSMS codes when assessing whether an individual closely approaching advanced age has transferable skills, and the regulations expressly do not require a complete similarity of degree of skill, tools and machinery used, and raw materials, products, processes or services involved. 20 C.F.R. §§ 404.1568(d)(3), 416.968(d)(3).

### B. Legal Standard

At step 5 of the sequential analysis, the burden of proof shifts from the claimant to the Commissioner, who must "identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite [her] identified limitations." Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (internal quotation marks and citation omitted); Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014). To carry her burden in this case, the Commissioner had to prove that plaintiff -- an individual with a high school education who is closely approaching advanced age, unable to perform her PRW, and limited to less than sedentary work -- acquired "transferable skills" from her past relevant work. See 20 C.F.R. Part 220 App. 2 §§ 201.14, 201.15 (directing that an individual with a high school education who is limited to sedentary work and unable to perform her past relevant work is disabled if she has no transferable skills and is not disabled if she has transferable skills). In addition, the ALJ was required to identify both the specific transferable work skills that plaintiff had acquired and the specific occupations to which those skills are transferable. See Bray v. Comm'r, 554 F.3d 1219, 1223-26 (9th Cir. 2009); Soc. Sec. Ruling 82-41, 1982 WL 31389 (Jan. 1, 1982).

The term "skill" is defined as follows:

> [K]nowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

Soc. Sec. Ruling 82-41.

A skill is "transferable" if the plaintiff (1) has demonstrated the skill in vocationally relevant past jobs and (2) can apply it to meet the requirements of other skilled or semi-skilled work. *See* Soc. Sec. Ruling 82-41; *see also* 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1). Skill transferability is most probable and meaningful among jobs in which: "(I) the same or a lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes, or services are involved." 20 C.F.R. §§ 404.1568(d)(2)(i)-(iii), 416.968(d)(2)(i)-(iii). Transferability of skills is not likely from the "simple type of work" involved in some positions at the lower level of semiskilled work in which "the worker has very little vocational advantage over an unskilled person and does not have transferable skills." Soc. Sec. Ruling 82-41.

### B. Analysis

The ALJ found that the Commissioner carried her burden at step 5, because according to VE Ey: plaintiff's past relevant work as a restaurant manager and a waitress was classified as skilled and semi-skilled work respectively (A.R. 203, 1280 (deferring to VE Berry's summary of plaintiff's past relevant work)); and plaintiff acquired "very basic customer service sales skills" from this work, which would transfer to the semi-skilled occupation of telemarketer (*id.* 713). The ALJ determined that VE Ey's testimony was "generally consistent with the information contained in the Dictionary of Occupational Titles (DOT)," and she "relied on [his] "expertise and experience in regard to issues not specifically addressed by the DOT." (*Id.* 713.)

However, VE Ey's testimony -- to the effect that plaintiff acquired "very basic customer service sales skills" from her past relevant work -- was inconsistent with: his testimony that he adopted VE Berry's summary of plaintiff's past relevant work; the DOT's descriptions of plaintiff's past relevant work; and the record as a whole. As stated above, the summary of plaintiff's past

relevant work adopted by VE Ey did not identify "sales skills" as skills that plaintiff acquired from her restaurant manager work and expressly stated that plaintiff acquired no transferable skills from her waitress work. (A.R. 203.) Further, the DOT does not include any reference to "sales" or "selling" or to acts of customer acquisition in its descriptions of either the restaurant manager or the waitress occupations, s*ee generally* DOT Nos. 187.167-106 (food service managers coordinate food service activities, estimate food costs, purchase supplies, direct hiring and assignment of personnel, investigate complaints, etc.), 311.477-030 (waitresses serve food, present menu, answer questions, make suggestions, write or memorize customer orders, etc.),[3] and plaintiff never testified that she actually performed any sales activities or acquired "sales skills" in performing her PRW (see generally A.R. 673-84, 1202-69, 1281; see also Soc. Sec. Ruling 82-41 ("The claimant is in the best position to describe just what he or she did in past relevant work . . . [and] what skilled or semiskilled work activities were involved"). Finally, VE Ey's testimony was inconsistent with VE Berry's testimony that plaintiff acquired no transferable skills of any kind from her past relevant work. (A.R. 685.) Accordingly, there is substantial evidence of record that plaintiff did not acquire transferable sales skills from her past relevant work, and the ALJ's reliance on VE Ey's assertion to the contrary is inexplicable given that his assertion contradicts the DOT descriptions of plaintiff's PRW.

Compounding the problem, the ALJ failed to obtain a reasonable explanation for the VE's deviation from the DOT's descriptions of the restaurant manager and waitress positions. Before relying on a VE's testimony, an ALJ must ask the VE if the evidence he has provided conflicts with the DOT, and if the VE's testimony "appears to conflict with the DOT," the ALJ must obtain a reasonable explanation for the conflict. SSR 00-4p. The ALJ may choose to accept testimony from a VE that contradicts the DOT, but only if the record contains "persuasive evidence to support the deviation." Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008). When the

---

[3] By comparison, the DOT describes telemarketers as soliciting orders, calling prospective customers, trying to persuade customers to buy, using prepared sales talks, recording information about prospective customers solicited, etc. DOT No. 299.357-014.

ALJ fails to identify and resolve an apparent inconsistency, and the discrepancy is not harmless,[4] the court may find that the ALJ's decision is not supported by substantial evidence. Zavalin, 778 F.3d at 846.

Here, the ALJ stated that she relied on VE Ey's testimony that plaintiff acquired "very basic customer service sales skills" from her past relevant work, which were transferable to the occupation of telemarketer. (*See generally* A.R. 713.) However, VE Ey offered no explanation for the discrepancy between this testimony and the DOT, which omits any reference to sales or customer acquisition activities from its description of the tasks performed by a restaurant manager and a waitress, and the ALJ neglected to ask VE Ey if his testimony conflicted with the DOT, solicit an explanation for the apparent discrepancy, or otherwise reconcile the inconsistency. (*See generally id.* 1280-85.) Furthermore, the ALJ's oversight is not harmless, because VE Ey's testimony does conflict with the DOT and he failed to provide "sufficient support" for the discrepancy on his own. See Massachi, 486 F.3d at 1154 n.19.

Finally, even if the record supported the ALJ's finding that plaintiff acquired knowledge of "customer service sales" activities from her past relevant work, the ALJ articulated no rationale for his unstated assumption that plaintiff's sales knowledge provided her with a "special," *i.e.* more than a "little," vocational advantage over an unskilled person, as is required for a claimant's knowledge of a work activity to constitute a "skill" under Social Security Ruling 82-41. Thus, regardless of whether there is substantial evidence that plaintiff performed sales activities as a waitress and/or restaurant manager, there is no evidence in the record that plaintiff's knowledge of sales activities provided her with a sufficient vocational advantage over an unskilled person to constitute a "skill" under the regulations.

---

[4] If the ALJ failed to perform any of his duties concerning the discovery and reconciliation of possible or apparent conflicts between the VE's testimony and the DOT, the ALJ's error is harmless if there was no actual conflict or the VE "provided sufficient support" for his conclusion. Massachi, 486 F.3d at 1154 n.19.

For these reasons, the Court finds that the ALJ's finding that plaintiff acquired transferable sales skills from her past relevant work is not supported by substantial evidence of record. Accordingly, the Commissioner failed to carry her burden at step 5.

**II.     Remand For Payment Of Benefits Is Warranted.**

Plaintiff filed her application for benefits more than eight and a half years ago, on October 2, 2006, and the matter has come before this Court twice due to agency errors.  In the last remand order, the Court cautioned the ALJ to ask the VE about any potential inconsistencies between his testimony and the DOT. (See A.R. 729-30.) On remand, however, the ALJ ignored the Court's admonition and neglected to ask VE Ey about the discrepancy between his testimony and the DOT's descriptions of her past relevant work. The ALJ's oversight is particularly troubling, because, in addition to being inconsistent with the DOT, VE Ey's testimony was inconsistent with VE Berry's assessment that plaintiff acquired no sales skills and no transferable skills from her past relevant work (see A.R. 208, 685), and with VE Ey's own testimony that he adopted VE Berry's assessment of plaintiff's past relevant work without any change or amendment (id. 1280). Against this background, the Court weighs its discretion to remand plaintiff's case for the immediate calculation and award of benefits.

"[The Court] may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." Brewes v. Comm'r, 682 F.3d 1157, 1164 (9th Cir. 2012).  Further proceedings are not necessary here, and there are no outstanding issues to resolve.  VE Berry assessed plaintiff as having acquired no "sales skills" and no transferable skills from her past relevant work.  VE Ey adopted VE Berry's assessment without change or amendment, and VE Berry's assessment of plaintiff's past relevant work has never been called into question. Furthermore, VE Berry's assessment is consistent with the DOT and the record as a whole, whereas VE Ey's contrary assessment is inconsistent with both. Accordingly, the Court finds that the record has answered the question of whether plaintiff

acquired transferable skills from her past relevant work with a resounding no.  To find otherwise would subject plaintiff to a "'heads [the Commissioner] win[s]; tails, let's play again' system of disability benefits adjudication."  See Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted).[5]

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED to defendant for the payment of benefits to plaintiff.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 30, 2015

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

---

[5] Furthermore, by the time further proceedings could be held in this matter, plaintiff would have turned 55 and thereby have passed through the "closely approaching advanced age" category and entered the "advanced age" category.  At that point, plaintiff's purported "customer service sales" skills could be considered transferable to the telemarketer occupation only if the telemarketer occupation "is so similar to [plaintiff's] previous work that [she] would have to make very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."  20 C.F.R. 404.1568(d)(4).  However, there is no question that the telemarketer occupation cannot meet this standard, because it would require plaintiff to make vocational adjustments "in terms of tools, work process, work settings, [and] industry."  (Compare DOT 187.167-106 (describing the restaurant manager occupation) with DOT 299.357-014 (describing the telemarketer occupation).)  Thus, regardless of whether the Court remands the matter for the award of benefits or for further proceedings, plaintiff ultimately will be entitled to benefits on remand.